DAVIS, Judge.
 

 Bud and Alta Brace challenge the trial court’s final order dismissing their multi-count complaint as to defendants Roy Boone, Steven King, and Sterling V. Realty (Sterling).
 
 [1]
 
 We affirm in part and reverse in part.
 

 The Braces’ suit resulted from a complicated series of transactions involving multiple parties. Annette Comfort, a defen
 
 *1009
 
 dant below who is not a party to this appeal, entered into a written agreement with Sterling, which is owned by Steven King. In their appellate briefs, both parties describe this agreement as a mortgage on a building and real estate in Pasco County; however, our record does not include a copy of this agreement. From our review of the documents that are contained in our record, it appears that this agreement was a lease with option to purchase rather than a written mortgage given to secure a purchase money promissory note.
 

 Comfort subsequently entered into a written contract “for bulk sale” with the Braces, by which Comfort agreed “to sell to [the Braces] the business together with the name, which sale will include the occupational business license, storage trailers, shed, on-sight mobile home, miscellaneous traders and all inventory located and situated on the premises ... including any and all office equipment.” The contract between Comfort and the Braces also included the following language:
 

 The property and building ... is encumbered by Mortgage being held by Sterling Realty, owned by Mr. Ste[v]en King ... which the Buyers will assume and pay in full and hold Seller harmless therefrom.... Buyers understand that they must enter into a separate agreement with Ste[v]en King to assume this Note and Mortgage and that
 
 Ste[v]en King is a part of this Contract
 
 and that without his agreeing to this contract, the Seller is not obligated. Seller has no authority to speak for or to commit Ste[v]en King to this Contract. Seller will represent to Buyers that Ste[v]en King has given a verbal approval and has indicated that he will prepare the necessary paperwork for the Buyers to assume this obligation and to take possession.
 

 (Emphasis added.) The contract further stated, “It is specifically understood by all the Parties to this Contract that real estate and the building ... [are] part of this purchase and that the mortgage securing this purchase will be assumed by the Buyers.” It appears from the record that the Braces never subsequently entered into a formal, written agreement with Sterling or King. However, in February 2003 the Braces began to make — and King/Sterling accepted — monthly payments on the property.
 

 In January 2006, the Braces sought clarification from King regarding their interest rate, and in February 2006, King faxed them a document entitled “addendum,” which indicated that the interest rate agreed to by Comfort and King was twelve percent and that a $187,409.96 balloon payment was due on March 1, 2006.
 
 [2]
 
 When the Braces were unable to make that balloon payment, King/Sterling sold the property to Roy Boone, Comfort’s father, by warranty deed. The Braces then filed a nine-count complaint, with counts for (1) declaratory relief as to Comfort, Sterling,
 
 *1010
 
 King, and Boone; (2) specific performance as to Boone; (3) civil conspiracy as to Comfort and Boone; (4) breach of contract as to Comfort; (5) tortious interference as to Comfort; (6) tortious interference with a contractual right as to Comfort and Boone; (7) unjust enrichment as to Comfort and Boone; (8) promissory estoppel as to Comfort; and (9) promissory estoppel as to Sterling and King.
 

 The defendants filed a joint motion to dismiss, arguing, “Each of the nine counts of the Complaint rely upon the factual allegations ... all relating to [the Braces’] alleged interest in real estate which is reflected by no written instrument, which violate[s] the statute of frauds.” The trial court granted the motion to dismiss only as to counts one, two, three, six, seven, and nine and only as to defendants Boone, King, and Sterling. In so doing, the court tracked the language of Florida’s statute of frauds, section 725.01, Florida Statutes (2006), by concluding that
 

 the claims against Boone, King, and Sterling are actions barred by the statute of frauds since the claims against such Defendants involve the alleged contract for sale of lands ..., or of any uncertain interest in or concerning them, or for any lease for a period longer than one year, or upon any agreement that is not to be performed within the space of one year and is not brought upon some note or memorandum thereof in writing and signed by the party to be charged.
 

 The Braces challenge this order, raising several issues.
 

 Declaratory Relief
 

 The Braces first argue that a statute of frauds defense is inapplicable to their claim for declaratory relief against Boone, Sterling, and King. We agree.
 

 In count one of their complaint, the Braces sought a declaration that the “payments” they had made to King/Sterling— and that King^Sterling accepted — “constituted a mortgage on the subject property pursuant to Fla. Stat. § 697.01.” Section 697.01, Florida Statutes (2006), provides that “[a]ll conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property ... for the purpose or with the intention of securing the payment of money ... shall be deemed and held mortgages.” The Braces also sought a declaration, pursuant to the same statute, that King/Sterling wrongfully conveyed the property to Boone and that Boone was not a bona fide purchaser for value.
 

 We agree with the Braces that the statute of frauds defense does not apply to their claim for declaratory relief. Although poorly stated, the essence of the complaint is that the Braces are seeking a judgment interpreting their rights contained in their written contract with Comfort as related to Comfort’s contractual rights with King/Sterling. That is, in asking that the payments be declared a mortgage pursuant to section 697.01, they are asking that the lease with option to purchase agreement between Comfort and King/Sterling be considered a mortgage under the statute and that the payments they made pursuant to the assignment of the lease/option agreement via their contract with Comfort be declared mortgage payments.
 

 Further, the prayer for a declaration of the status of Boone is, in effect, their request that the trial court (1) determine their rights under the two contracts, (2) determine whether King/Sterling could convey the property to Boone, and (3) determine whether Boone was a bona fide purchaser for value. All of these issues depend on what meaning the trial court
 
 *1011
 
 ascribes to the two -written agreements, i.e. the agreement between Comfort and King/Sterling and the agreement between Comfort and the Braces. Since this count involved written agreements, the trial court erred in dismissing the count based on the statute of frauds. Accordingly, we reverse the trial court’s dismissal of count one for declaratory relief as to King, Sterling, and Boone.
 

 Unjust Enrichment
 

 We also reverse the trial court’s dismissal of count seven as to Boone, in which the Braces alleged unjust enrichment. The complaint alleges that the property is worth $450,000 and that Boone was able to purchase it for $198,000. Based on the plain language of section 725.01, such a claim is not subject to the statute of frauds as it does not involve a “contract for the sale of lands, tenements or hereditaments, or ... any uncertain interest in or concerning them, or for any lease thereof for a period longer than 1 year, or upon any agreement that is not to be performed within the space of [one] year.”
 
 See also Kolski ex rel. Kolski v. Kolski
 
 731 So.2d 169 (Fla. 3d DCA 1999) (concluding that a statute of frauds defense is inapplicable to such equitable claims as unjust enrichment, restitution, and imposition of a constructive trust). This claim is an equitable claim that suggests Boone was able to obtain a property of greater value for a lesser cost at the Braces’ expense. As such, the statute of frauds does not apply.
 

 Civil Conspiracy and Tortious Interference
 

 The Braces also argue that the trial court erred in denying their claims against Boone for civil conspiracy and tortious interference with contract because the statute of frauds does not bar these claims. We agree.
 

 In the civil conspiracy count, the Braces alleged, “On or before February 28, 2006, Comfort and her father, Boone, knowingly and willfully conspired and agreed among themselves to damage Plaintiffs by depriving Plaintiffs
 
 of the benefits of their contract,
 
 specifically as it related to the subject property.” (Emphasis added.) The Braces maintained that this was accomplished by Comfort and Boone when “in furtherance of the conspiracy, Comfort and Boone secured a mortgage on the subject property” from a third-party lender on February 28, 2006 — before the Braces’ balloon payment was even due to King/Sterling. In their count for tortious interference, the Braces alleged that by securing the purchase money financing to purchase the subject property pursuant to the agreement between Comfort and King/Sterling, Boone interfered with the Braces’ contractual rights to the property that they had obtained through their agreement with Comfort.
 

 Because claims for civil conspiracy and tortious interference are based on improper acts that are alleged to be conspiratorial in nature and an interference with contractual rights, rather than on the contract itself, the statute of frauds does not apply. Furthermore, even if the claims were considered to be based on the contract itself, the statute of frauds would not apply because the contract implicated here is the written agreement between Comfort and King/Sterling that was assigned to the Braces via their written agreement with Comfort. Accordingly, we reverse the trial court’s dismissal of counts three and six of the Braces’ complaint as to Boone.
 

 Specific Performance
 

 On appeal, the Braces argue that the statute of frauds does not bar their claim against Boone for specific performance. The Braces alleged that the agreement between Comfort and King/Sterling obli
 
 *1012
 
 gated King/Sterling to convey the property to Comfort upon the payment of the sums called for in the agreement. The Braces further alleged that after entering into the contract with Comfort and relying on the terms of that contract that called for the Braces to assume Comfort’s rights and obligations pursuant to the agreement between Comfort and King/Sterling, they made the specified payments. The Braces also allege that Boone purchased the property from King/Sterling with full knowledge of their contract with Comfort. Accordingly, the Braces argue that Boone is obligated to honor the rights assigned to the Braces by Comfort and to deliver title to them upon their payment of the final payment called for in Comfort’s agreement with King/Sterling. Accordingly, their complaint sought specific performance by Boone, i.e. requiring Boone to accept their payment of the contractually required amount and to convey title to the property to the Braces.
 

 However, “[f]or a real estate purchase contract to be enforceable through specific performance it must first be ‘embodied in one or more written documents or memoranda
 
 signed by the party against whom enforcement is sought.’
 
 ”
 
 Nu-Vision, LLC v. Corporate Convenience, Inc.,
 
 965 So.2d 232, 234 (Fla. 5th DCA 2007) (quoting
 
 de Vaux v. Westwood Baptist Church,
 
 953 So.2d 677, 681 (Fla. 1st DCA 2007)). Boone was not a party to the Braces’ contract with Comfort, and Boone has not signed a contract with the Braces. Accordingly, although the Braces are correct that the statute of frauds does not bar this claim, they have not shown error with regard to count two because they have not and cannot allege a written contract with Boone, as is necessary for a specific performance claim. We therefore affirm the trial court as being right for the wrong reasons.
 
 See Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644 (Fla.1999) (“[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.”).
 

 Promissory Estoppel
 

 In count nine of their complaint, the Braces alleged that King/Sterling’s “promise to allow [the Braces] to assume the mortgage and contract for deed to the subject property caused [the Braces] to pay $140,000.00 [to Comfort] and assume the mortgage payments and all other costs of ownership, including property taxes, insurance, maintenance, improvements and repairs.” The promise to which the Braces referred is included in their contract with Comfort, which states, “Seller will represent to Buyers that Ste[v]en King has given a verbal approval and has indicated that he will prepare the necessary paperwork for the Buyers to assume this obligation and to take possession.” Additionally, King/Sterling sent a letter to the Braces that included a payment schedule and specified an interest rate for the payments. The Braces argue that the representations made in their contract with Comfort — that were ratified by King/Sterling’s “addendum” and King/Sterling’s acceptance of their payments — caused the Braces to rely on these contractual rights and to perform by continuing to make payments to King/Sterling. The Braces argue that, as a result of this reliance, King/Sterling’s conveyance of the property to Boone was in derogation of their contractual rights and financially damaged them. In essence, the Braces asked the trial court to find that King/Sterling was equitably estopped from conveying the property and was responsible to the Braces for any damages they suffered as a result of that conveyance.
 

 
 *1013
 
 This claim is based both on the interpretation of the two written documents and the equitable principle of estoppel. As such, the claim would not be barred by the statute of frauds, and the trial court erred in making such a determination. We therefore reverse the dismissal of count nine.
 

 Conclusion
 

 In conclusion, we affirm the trial court’s dismissal of count two, reverse the trial court’s dismissal of counts one, three, six, seven, and nine, and remand for the trial court to address the merits of those counts.
 

 Affirmed in part, reversed in part, and remanded.
 

 FULMER and VILLANTI, JJ., Concur.
 

 [1]
 

 . The Braces' motion to dismiss was denied as to defendant Annette Comfort. King and Sterling make no appearance in this appeal.
 

 [2]
 

 . The addendum described the original transaction as an "option to purchase property” and specified the terms. The purchase price was designated as $198,000 with a down payment of $19,800. The addendum then specified that the amount financed was $178,200 and provided for "60 monthly installments of $1,832.99 with a final balloon payment due March 1, 2006.” The addendum also acknowledged that "Lessee has paid $5,000 purchase option money at signing. Lessee agrees to pay an additional $14,800 toward down payment on or before March 1, 2001, in order to exercise the option to purchase. Purchase option money is not refundable. Seller agrees to finance property when second installment of down payment is made.” After King provided the "addendum” to the Braces, he wrote a letter to them, in which he stated, "I’m not going to accept your attorney’s interpretation of my contract with Annette Comfort just because you say, or he, says I should. My attorney says I have a lease with option to purchase agreement with her and I agree.”